**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**RHODE ISLAND AND SOUTHEASTERN MASSACHUSETTS CHAPTER OF THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION**

**v.** **C.A. No.:**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION N0. 99**

CA 08 150T

## COMPLAINT

## PARTIES

1. Plaintiff, Rhode Island and Southeast Massachusetts Chapter of the National Electrical Contractors Association ("NECA"), is a management association with a principal place of business at 779 Park Avenue, Cranston, Rhode Island.

2. Defendant, International Brotherhood of Electrical Workers, Local Union No. 99 ("Local 99"), is a labor association with a principal place of business at 22 Amflex Drive, Cranston, Rhode Island.

## JURISDICTION

3. This Honorable Court has jurisdiction over the instant case by and through 9 U.S.C. § 9 and 29 U.S.C. § 185(c), concurrently.

## FACTS

4. John Badessa ("Badessa") has been a member of Local 99 since 1973.

5. On July 31, 2007, Badessa applied to receive his Local 99 pension benefits, payments to begin in October 2007.

6. On September 28, 2007, Badessa resigned his full-time position with Croce

Electric Co., Inc. ("Croce").

7. Thereafter, Badessa relocated from Rhode Island to Florida and he then became re-employed by Croce in a significantly reduced role, to work no more than 40-hours per month.

8. On December 31, 2007, Badessa resigned entirely from his part-time position with Croce.

9. The Local 99 Agreement and Declaration of Trust ("Trust Agreement") sets forth the applicable dispute resolution processes to be used in resolving whether a particular is eligible for benefits pursuant to the terms of the Plan Document.

10. The Trust Agreement confers discretionary power upon an equal number of employer trustees and union trustees to distribute pension benefits to applicants in accordance with the terms and programs set forth in the Local 99 Retirement Fund Plan Document ("Plan Document").

11. Section 5.11(c) of the Trust Agreement provides that in the event that the trustees become deadlocked on any particular vote, the subject issue may then be referred to arbitration. Section 5.11(c) provides also that "The decision of the impartial arbitrator so agreed upon or appointed shall be final and binding on all the parties and persons concerned."

12. Badessa's application for pension benefits was never voted on by the trustees, and, therefore, no deadlock was ever reached. However, in the course of other, related litigation between NECA and Local 99, it became apparent that the employer trustees, i.e., NECA, were in favor of granting the benefits while the union trustees were against.

13. On information and belief, the union trustees steadfast refusal to vote to distribute Badessa's pension benefits was due solely to Badessa's long time affiliation with NECA, a

management association.

14. Badessa's application therefore became a subject of some dispute, and as part of a global settlement agreement reached in that other, related litigation, NECA and Local 99 agreed to stipulate that all other remedies had been exhausted and that the matter of Badessa's pension would proceed directly to arbitration. The said settlement agreement provided as follows:

> "The retirement application[] of John Badessa [] shall be referred to Arbitration according to the terms of the Retirement Fund Trust Agreement and Summary Plan Description...[T]he parties hereby select Francis O'Brien as arbitrator. No further exhaustion of remedies shall be required...In the event that an award is rendered in favor of [] Badessa [], pension contributions shall commence as of date of application of [the] applicant."

15. Prior to the arbitration, the union trustees agreed with the employer trustees that Badessa was entitled to his Local 99 pension benefits beginning January 1, 2008, the date on which is retirement from his part-time re-employment with Croce became effective. The employer trustees, on the other hand, maintained that Badessa was entitled to retroactive Local 99 pension benefits beginning October 1, 2007, the date referenced on his application.

16. Therefore, the matter proceeded to binding arbitration to address the following issue: whether Badessa was entitled to receive his retirement benefits for the period October 1, 2007 to December 31, 2007?

17. On January 16, 2008, the matter was heard before an arbitrator.

18. On March 10, 2008, the arbitrator rendered his decision. (Decision at Exhibit "A") The arbitrator, interpreting the terms of the Plan Document and found that Badessa's part-time re-employment with Croce did not disqualify him from receiving his Local 99 pension, and, therefore, Badessa was entitled to receive his pension benefits for the period October 1, 2007 to

December 31, 2007.

19. Despite the findings of the arbitrator, the union trustees refused to immediately vote to distribute Badessa's retroactive benefits. Instead, citing no provision in either the Fund Agreement or the Plan Document, the union trustees insisted on putting the vote off until the next board of trustees meeting was called.

20. The next board of trustees meeting was called on April 25, 2008.

21. At said meeting, a motion was made by a management trustee to distribute to Badessa his pension payments for the period October 1, 2007 to December 31, 2007, pursuant to the arbitrator's findings.

22. The union trustees refused to so vote.

23. To date, Badessa has not received his Local 99 pension payments for the period October 1, 2007 to December 31, 2007.

**COUNT I**
**(Enforcement of Award)**

24. Plaintiff repeats and realleges paragraphs 1 through 23 as if set forth fully herein.

25. In accordance with Section 301 of the Labor Management Relations Act (29 USC §185) NECA is seeking to have the arbitrator's award confirmed by this Honorable Court.

WHEREFORE, NECA demands that this Honorable Court enter an order confirming the arbitrator's award and that judgment enter on the award in favor of NECA, and against Local 99, and that such judgment include payment of Badessa's pension benefits for the time period October 1, 2007 to December 31, 2007, plus interest and costs, as well as whatever other award this Honorable Court deems fit and just.

**COUNT II**
**(Attorneys' Fees)**

26. Plaintiff repeats and realleges paragraphs 1 through 25 as if set forth fully herein.

27. Local 99's continued refusal to comply with the arbitrator's decision is entirely without justification and represents bad faith.

28. As a direct and proximate result of Local 99's continued refusal to comply with the arbitrator's decision, NECA has been relegated to seeking judicial enforcement of the arbitrator's decision as necessary and, therefore, this Honorable Court should award NECA its reasonable attorneys' fees and costs in so doing.

WHEREFORE, NECA requests that this Honorable Court award reasonable attorney's fees and costs against Local 99.

Plaintiff,
By Its Attorneys,

Girard Visconti, Esq. (#0566)
David L. Fine, Esq. (#7368)
Visconti & Boren, Ltd.
55 Dorrance Street
Providence, RI 02903
Phone: (401) 331-3800
Facsimile: (401) 421-9302

Dated: 4/30/08