EXHIBIT A

**In the Matter of the Arbitration Between**

Trustees of NECA – Rhode Island Division

and

Trustees of IBEW – Local Union 99

RE: IBEW – Local Union 99: Retirement Fund Agreement and Declaration of Trust

IBEW – Local Union 99: Retirement Fund Plan Document

## APPEARANCES

For Management Trustees

Girard R. Visconti, Esq.

For Union Trustees

Marc B. Gursky, Esq.

## ARBITRATOR

Francis T. O'Brien

# I

## STATEMENT OF THE CASE

This case arises under the terms of the IBEW Local Union 99 RETIREMENT FUND AGREEMENT AND DECLARATION OF TRUST (Amended September 1, 1999) and IBEW Local Union 99 RETIREMENT FUND PLAN DOCUMENT (Amended June 1, 2001) and an agreement reached by the Trustees in C.A. No. 07-371T (United States District Court – District of Rhode Island).

A hearing was conducted by the undersigned Arbitrator on January 16, 2008 at the office of Visconti & Boren Ltd. 55 Dorrance Street, Providence, Rhode Island, 02903.

Both Parties were represented at the hearing, and were afforded full opportunity to examine and cross-examine witnesses, introduce documentary evidence, and argue their respective positions orally.

At the request of the Parties, the witnesses were sworn. The Parties submitted post-hearing briefs.

**ARBITRATION**

**OF**

**JOHN MCGEE, JR.**

## II

## THE ISSUE

The Parties stipulated to the Issue as follows:

Should the application for retirement benefits by Mr. McGee be allowed?

III

## (A) PROVISIONS OF THE RETIREMENT FUND PLAN DOCUMNET

The following provisions of the RETIREMENT FUND PLAN DOCUMENT ("PLAN DOCUMENT") are particularly pertinent.

## ARTICLE II

## DEFINITIONS

**2.1** The term "ACT" means the Employee Retirement Income Security Act of 1974, as hereto hereafter amended. Reference to a specific provision of the Act shall include such provision, any valid regulation or ruling promulgated thereunder, and any provision of future law that amends, supplements or supersedes such provision.

**2.11** The term "COVERED EMPLOYMENT" means employment of an Employee by an Employer in any capacity for which such Employer has agreed to, and thus is or was required to contribute to the Plan on behalf of said Employee pursuant to the terms and conditions of a Collective Bargaining Agreement with the Union; and shall include the employment of employees of the Union and/or any Union benefit fund(s) insofar as the Union and/or benefit fund(s) adopt(s) the Plan or agree(s) to make contributions to the Plan with respect thereto.

**2.13** The term "EMPLOYEE" means, and shall be limited to the following four (4) categories:

(a) An Employer's employees who are members of the Union, who provide services within the scope of the CBA's (e.g. apprentices, journeymen, foremen, and general foremen), and for whom said Employers have agreed pursuant to one or more "signatory agreements" with the Union to make contributions into the Retirement Fund under the terms and conditions of the CBA's.

(b) An Employer's employees who are members of the Union, who provide services which are outside the scope of the CBA's (e.g. supervisors, estimators, etc.), and

for whom said Employers have agreed pursuant to one or more "participation agreements" with the Union to make contributions into the Retirement Fund under the terms and conditions of the CBA's.

(c) An Employer's owner(s) who are members of the Union, notwithstanding whether said owner(s) provide services within the scope of the CBA's, for whom said Employers have agreed pursuant to one or more "participation agreements" with the Union to make contributions into the Retirement Fund under the terms and conditions of the CBA's. An owner of an Employer shall mean a principal of an incorporated trade or business, and shall not include a partner or proprietor of an unincorporated trade or business.

(d) The Employees of the Union and/or any benefit fund for whom contributions are agreed to be made to the Retirement Fund by the Union (in its capacity as an "Employer" as defined herein) and/or the respective fund, pursuant to a "participation agreement" with the Union (in its capacity as Local Union #99).

**2.14** The term "EMPLOYER" means any and all employers which are signatories to one or more of the Collective Bargaining Agreements in effect with the Union (i.e. have executed a "signatory agreement" with the Union), which Collective Bargaining Agreements require contributions to be made to the plan on behalf of Employees. The term "Employer" shall also include the Union (or any union which is part of the union) and/or any Union benefit Fund, if it has made application to become a party pursuant to a "participation agreement" to contribute to the Plan for its Employees.

## ARTICLE VI

## ELIGIBILTY FOR BENEFITS AND AMOUNTS OF BENEFITS

**6.1 General.**

This article sets forth the eligibility conditions and benefit amounts for the pension provided by this plan. The accumulation and retention of years of Credited Accrual Service for eligibility are subject to the provisions of Article V. The benefit

amounts are subject to reduction to reflect the optional forms of payments, as described in Article VII. AN eligible Member's ability to receive pension benefits is subject to his retirement and application benefits.

Eligibility for a pension depends on years of Vesting Service which are defined in Section 5.4. The amount if a pension depends on years of Credited Accrual Service, which are defined in Sections 5.1, 5.2 and 5.3, and said amount of a pension is subject to the maximum benefit rules described in Article IX, and the top heavy provisions in Article XVII.

For purposes of this Article regarding Eligibility for Benefits, the phrase "employment in the electrical industry" includes employment in: (i) Covered Employment, (ii) other employment of self employment in jobs within the craft jurisdiction of any I.B.E.W. local union, and/or (iii) any employment or self-employment in any jobs within the electrical industry, or in any jobs or positions associated with, related to, or derived from the electrical industry. In following, for purposes of this Article regarding Eligibility for Benefits, the phrases "retired from the electrical industry" and "retirement for the electrical industry" shall mean that the Member must withdraw completely form and refrain from any further: (i) Covered Employment, (ii) other employment or self-employment in jobs within the craft jurisdiction of any I.B.E.W. local union, and/or (iii) any employment or self-employment in any jobs within the electrical industry, or in any jobs or positions associated with, related to, or derived from the electrical industry.

**6.2 <u>Normal Retirement Pension – Eligibility.</u>**

A member shall be eligible to retire and receive a Normal Retirement Pension if he meets the following requirements:

(i) his attainment of Normal Retirement Age, as defined herein and

(ii) his retirement form the electrical industry.

Payment of the Normal Retirement Pension hereunder shall commence as of the first day of the month after the Member's retirement.

**(B) PROVISIONS OF THE RETIREMENT FUND AGREEMENT AND DECLARATION OF TRUST**

The following provisions of the RETIREMENT FUND AGREEMENT AND DECLARATION OF TRUST Article V 5.3, 5.11 (e) are particularly pertinent.

**ARTICLE V**

**CONCERNING THE TRUSTEES**

5.3 The Trustees may promulgate such rules and regulations as may, in their discretion, be proper and necessary for the sound and efficient administration of the Fund.

5.11 (e) In the event the Trustees are deadlocked and unable to agree upon a course of action the Board may engage an impartial arbitrator to decide the matter or question in dispute. In the event the Board cannot agree upon an impartial arbitrator, not less than three (3) Trustees shall have the power to petition the American Arbitration Association, which shall appoint the arbitrator in accordance with its procedural rules.

The decision of the impartial arbitrator so agreed upon or appointed shall be final and binding on all parties and persons concerned. All reasonable and necessary costs and expenses incidental to the proceedings before the arbitrator, including the fee, if any, of the arbitrator, as well as attorneys' fees incurred by any Trustees in connection with such dispute, shall be a proper charge against the Retirement Fund, and the Trustees are authorized and directed to pay such charge.

For purposes hereof, the term "deadlocked" shall mean that there us a tie vote among the Trustees on a particular matter and such a tie vote shall occur over two (2) successive meetings.

**(C) PROVISIONS OF THE AGREEMENT AND DECLARATION OF TRUST**

The following provisions of the AGREEMENT AND DECLARATION OF TRUST Article IV are particularly pertinent.

**ARTICLE IV**

**FUNCTIONS OF TRUSTEES**

1. The Trustees, in addition to the powers otherwise provided in this Amended Agreement and Declaration of Trust, and in addition to all other powers conferred upon them by common law or by statute, shall have all general and incidental powers necessary desirable or appropriate to the administration of the Trustee, including but not by way of limitation, the power to:

(a) Collect contributions to the Trust in weekly or monthly intervals, or on the basis of their estimates in advance, and in connection therewith to do all things necessary to enforce the payment of contributions by Employers under the terms of the Agreement, or under any other Agreement, but the Trustees shall have no liability with respect to the failure of any Employer to make contributions to the Trust. The failure of an Employer to pay the contributions required hereunder promptly when due shall be a violation of the Employer's obligation hereunder. Non-payment by an Employer shall not relieve any other Employer of his obligations to make payments. An Employer in default for ten (10) working days may be required at the discretion of the Board of Trustees to pay such reasonable rate of interest but not in excess of one (1%) percent per month as the Board of Trustees may fix on the monies due to the Board of Trustees from the date payment was due to the date payment is made, together with all expenses of collection incurred by the Board of Trustees, plus reasonable attorney's fees, court costs, and the cost of any audit. The Board of Trustees may take any action necessary to enforce payment of the contributions due hereunder, including, but not limited to proceedings at law and equity and arbitration and any remedies which would generally be available under the collective Bargaining Agreement.

(b) The Employers shall make all reports on contributions reasonably required by the Board of Trustees and to furnish such information as the Board of Trustees may reasonably deem necessary for the proper administration of this Trust. The Board of Trustees may at any time have an audit made of the payroll records of any employer in connection with said contributions and reports by an independent auditor who shall be a certified public accountant. The Trustees may, among other things, determine through said audit whether each employer has made proper contributions in accordance with its obligations under this Trust.

(c) Pay and provide for the payment of the cost of acquisition of real estate suitable for the purposes of carrying on an apprenticeship training program, and for the proper furnishing thereof, and for the employment of suitable personnel to conduct such an apprenticeship training program, and program for the training of journey-man electricians and others; and to procure and provide such insurance as they deem desirable;

(d) To collect and administer as part of the Trust Fund all dividends, credits, reimbursements, and other sums which may come into their possession;

(e) To establish such reserves as they in their discretion deem necessary or desirable;

(f) Pay or provide for the payment of all reasonable and necessary expenses relating to contributions and the administration of the Trust Fund;

(g) Make such rules and regulations as may be required to administer the Trust Fund, and to provide for the organization, maintenance, and furtherance of a Joint Apprenticeship Program and any and all incidental training programs and benefits which may be connected therewith or incidental thereto, and to determine all matters pertaining to the same;

(h) Purchase, lease, or otherwise acquire an interest in any property, real, personal, or mixed, necessary or incidental to the purpose thereof;

(i) Invest and reinvest all or any part of the Trust Fund in investments which are legal for savings bank deposits under Rhode Island law, provided, however, that no percentage limitations shall apply to investments of the Trust Fund, and to hold all or any part of the Trust Fund uninvested. In the event any such investment shall cease to be a

legal investment, the Trustees may nevertheless, in their discretion, retain such investments;

(j) Make agreement with any bank, trust company, or savings bank or association, authorizing any such bank or association to invest and reinvest all or any part of the Trust Fund as herein provided, and in connection therewith to convey and transfer to any such bank or association all or any part of the Trust Fund;

(k) Make any and all contracts and agreements to administer and carry out the Trust and to do all such acts as the Trustees in their discretion shall deem necessary or advisable, and all such contracts, agreements, and acts shall be binding and conclusion on the Trust and on all parties hereto and on the Employees and apprentices involved, but shall not be binding on the Trustees in their individual capacities;

(l) Sell, exchange, lease, convey, release, or otherwise dispose of any property, real, personal or mixed, at any time forming a part of the Trust Fund, upon such terms as the Trustees may deem proper, and to execute and deliver any and all instruments necessary or advisable to complete such transactions;

(m) Participate in dissolutions, reorganizations, consolidations, mergers, sales, leases, mortgages, transfers, releases, or other matters affecting securities held by the Trustees, and in connection therewith to pay assessments, subscriptions or other charges;

(n) Compromise, settle, arbitrate, or release claims or demands in favor of or against the Trust, on such terms and conditions as the Trustees may deem advisable;

(o) Keep properties and securities registered in the name of the Trustees, or in the name of a nominee or nominees, or in unregistered or bearer form;

(p) Borrow money in such amounts and upon such terms and conditions, as may be deemed advisable by the Trustees, in order to carry out the purposes of the Trust, and to pledge or mortgage any securities or other properties of the Trust Fund for the repayment of any such loan;

(q) Pay out of the Trust Fund any and all, if any, real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws, upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof;

(r) Institute any suit or legal process of any kind and nature on behalf of the Trust, and to defend and suit or proceeding against or in respect of the Trust. Such actions may, if otherwise permissible, be brought and conducted in the name of the Chairman of the Board;

(s) Employ such legal, actuarial, accounting, and administrative assistance as may be deemed necessary, and to delegate any of their ministerial powers to any of their agents or employees. Any person may be so employed by the Trustees even though performing similar functions for the Union, the Association, or an Employer. All fees and expenses of any such person so employed by the Trustees shall be paid by the Trust Fund.

## IV

## BACKGROUND

Mr. McGee has been a member of Local 99 since 1967. He retired from full time employment with Electrical Maintenance and Control, an electrical contractor, in May, 2006. About four (4) or five (5) months later, he was hired by NECA[1] to work on a part time basis. He averaged twenty (20) hours per week. His employment by NECA ended in June, 2007 or in the fall of 2007[2].

Approximately ten (10) years ago, Mr. McGee was appointed a Trustee of the Local 99 Joint Apprenticeship and Training Trust Fund ("Apprentice Fund"). He continues to hold that position today.

On July 6, 2007, Mr. McGee applied for retirement benefits to begin on July 1, 2007. His application for benefits was denied by the Trustees.

[1] National Electrical Contractors' Association (Rhode Island and Southeastern Massachusetts Division)
[2] Mr. McGee's testimony conflicted on this point.

V

## POSITION OF THE PARTIES

### POSITION OF THE UNION TRUSTEES

It is the position of the Union Trustees that Mr. McGee is not entitled to retirement benefits because he has not retired from the electrical industry. His position as Trustee of the Apprenticeship Fund disqualifies him.

Article VI of the Plan Document clearly states that a member must be retired from the electrical industry to be eligible for a retirement pension. Article VI.I states that retirement from the electrical industry shall mean that the Member must withdraw completely from and refrain from any further:

i. Covered Employment

ii. Other employment or self-employment in jobs within the craft jurisdiction of any I.B.E.W. local union, and/or

iii. Any employment or self-employment in any jobs within the electrical industry, or in any jobs or positions associated with, related to, or derived from the electrical industry.

Because Mr. McGee has not retired as defined under Article VI, he is not entitled to a retirement benefit.

The Union Trustees further note that the Plan Document makes no distinction between compensated and uncompensated positions; therefore voluntary service falls within the scope of Article VI.

**POSITION OF THE MANAGEMENT TRUSTEES**

It is the position of the Management Trustees that Mr. McGee is entitled to his retirement benefits because he has reached the requisite age for retirement, has accumulated the requisite years of service, and has retired from the electrical industry.

The Management Trustees point out that Mr. McGee's activity as a Trustee is not work or employment. It is volunteer service for which no compensation is received by him either directly or indirectly. Moreover, the duties that Mr. McGee performs as a Trustee are not electrical; they are administrative in nature. Thus, there is a clear distinction between the activities that Mr. McGee performs as a Trustee and the work which is performed by the Members of the I.B.E.W.

Mr. McGee is not employed within the sense of Article 6.1 and is entitled to receive his benefits.

VI

**DISCUSSION AND AWARD**

At issue in the instant case is whether or not Mr. McGee has retired from employment in the electrical industry. Article 6.1 of the Plan Document makes specific reference to this requirement and notes that the retirement must be complete and final.

The Union Trustees contend that Mr. McGee did not retire and they point to his position as a Trustee of the Apprenticeship Fund to support their contention.

If, Mr. McGee's status as a Trustee of the Apprenticeship Fund disqualifies him from receiving retirement benefits, then the relationship which exists between Mr. McGee and the Apprenticeship Fund must fall under one of the three (3) employment relationships identified by Article 6.1 of the Plan Document. If his status falls under one (1) of these employment relationships then it may be concluded that he has not completely and finally separated himself from employment. Hence, he would not have retired and thus would not be eligible for retirement benefits.

To ascertain the status of Mr. McGee, it is necessary to examine each of the employment relationships which the Plan Document says should be applied to determine if a Member has retired.

These include:

(a) Employment Relationship: (i) Covered Employment

Covered Employment does not describe the relationship between Mr. McGee and the Apprenticeship Fund because, as per Article 2.11, it makes reference to employers who have agreed to make/make contributions to the Retirement Fund on behalf of its employees. It states further that these contributions are made pursuant to the terms of a collective bargaining agreement. It also states that employees of the Union or of any union benefit fund shall be included if contributions to the Retirement Fund are made on their behalf. None of these conditions are applicable to the status of Mr. McGee in his capacity as Trustee. Hence, he is not employed by this standard.

(b) Employment Relationship: (ii) other employment or self-employment in jobs within the craft jurisdiction of any I.B.E.W. local union.

This standard addresses itself to jobs within the craft jurisdiction (emphasis added) of the I.B.E.W. Since "craft jurisdiction" is not defined in the documents pertinent to this arbitration, the Arbitrator is obliged to determine the scope of the term. This Arbitrator finds that a reasonable interpretation would not include the position of Trustee among the usual and customary jobs that fall within the craft jurisdiction of the I.B.E.W. Hence, Mr. McGee is not employed by this standard.

(c) Employment Relationship: (iii) any employment or self-employment in any jobs within the electrical industry, or in any jobs or positions associated with, related to, or derived from the electrical industry.

This very broad standard is obviously designed to encompass a wide variety of jobs. But the key element within this standard is "employment" (or "self-employment"). Indeed, the notion of employment applies to all of the employment relationships. If there is employment, there must be an employer. Surely, in his capacity as Trustee, Mr. McGee is not self-employed. Therefore, we must look elsewhere. Is he employed by the Union, or by the Retirement Fund, or by the Trustees themselves? There is nothing in the record to suggest an employment relationship between Mr. McGee and any of these entities –or with any other entity. The Plan Document which defines the term "Trustee" in Article 2.28 says that it means "members of the Board of Trustees…". In this definition, there is not even a hint of an employment relationship. Rather, "Member" in this context would suggest a relationship similar to the relationship that a person might have with a fraternal organization. One is part of it, but is not employed by it.

It is abundantly clear from the record that Mr. McGee is not involved in an employment relationship within the proscription of Article 6.1. Thus, he is entitled to his retirement benefits.

Accordingly, the Arbitrator AWARDS as follows:

The application for retirement benefits by Mr. McGee is allowed[3] .

Respectfully Submitted,

Francis T. O'Brien
Arbitrator
March 14, 2008

[3] Recognizing the inconsistency of Mr. McGee's testimony with respect to when he ended his employment with NECA, Mr. McGee must establish, to the satisfaction of the Trustees, when his employment with NECA actually ended. The Arbitrator retains jurisdiction for forty-five (45) days to insure compliance with this question.